UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cr-20685-KMW

UNITED STATES OF AMERICA,

V.

ABRAHAM EDGARDO ORTEGA,

Defendant

And

LAND TRUST TH 041117,

Third-Party Petitioner.
_____/

**LAND TRUST TH 041117'S THIRD-PARTY PETITION FOR HEARING TO ADJUDICATE VALIDITY OF INTEREST IN REAL PROPERTY SUBJECT TO FORFEITURE**

Pursuant to 21 U.S.C. § 853(n) and Federal Rule of Criminal Procedure 32.2(c), Land Trust TH 041117, through its Trustee Tulia Eugenia Hernandez, files this petition to request that the Court adjudicate its interest in real property located at 2101 South Surf Road, Unit 2E, Hollywood, Florida (the "Condominium") and amend the Preliminary Order of Forfeiture (ECF No. 124) to exclude the Condominium from the class of assets subject to forfeiture in satisfaction of the $12 million forfeiture money judgment entered against Defendant Abraham Edgardo Ortega.

**INTRODUCTION**

Neither Defendant Ortega nor Gustavo Adolfo Hernandez Frieri ("Gustavo"), who are under federal indictment,[1] have ever directly or indirectly owned or held any ownership interest in

---

[1] *See United States of America v. Guruceaga, et al.*, Case No. 18-cr-20685, DE 19 (S.D. Fla. Aug. 17, 2018). Gustavo has pled not guilty to the charges in the indictment.

the Condominium. Rather, the Condominium is owned by Land Trust TH 041117 (the "Land Trust"), established by Gustavo's sister-in-law Tulia Eugenia Hernandez ("Tulia")[2] and held in a separate irrevocable pour over trust (the "Pour Over Trust") established by Tulia and her husband Cesar to benefit their four adult children.

The only connection the Condominium has to this matter is that a small portion of the funds Tulia used to purchase the $1,050,000 Condominium directly from the developer came from a short-term loan provided by entities touched upon in Defendant Ortega's and Gustavo's indictments: the Florida corporation Global Securities Management, LLC ("GSM"), a management company for several corporate entities affiliated with different members of the Hernandez family, and the investment fund Global Securities Trade Finance ("GSTF"). All but $39,540 of the loan from GSM, was repaid by May 2017, a month after Tulia closed on the Condominium. The balance could not be repaid, however, because a court-ordered foreclosure was entered around that time against GSM arising out of litigation between Kronos LLC and GSM. Moreover, Tulia and Cesar did not know the short-term loan was allegedly funded with criminal proceeds or that criminal proceeds were laundered through GSTF, an entity Tulia and Cesar understood to be in the business of providing legitimate services and loans to many other clients since 2003. In short, Tulia and Cesar are the true owners of the Condominium, which has only an unintended, *de minimis*, and innocent financial connection to this criminal matter.

Given this context, the Condominium is not subject to forfeiture under the relevant statute, which only authorizes forfeiture of property of the defendant. Alternatively, the Condominium is

---

[2] Tulia is married to Gustavo's brother, Cesar Gabriel Hernandez Frieri ("Cesar").

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687
www.sfslaw.com

2

not subject to forfeiture because Tulia and Cesar were reasonably without cause to believe that the funds used to finalize the purchase of the Condominium were subject to forfeiture.

## PROCEDURAL BACKGROUND RESULTING IN PRELIMINARY ORDER OF FORFEITURE

**Defendants Ortega and Gustavo are Indicted but the Condominium is not Identified as Property Subject to Forfeiture.**

On August 16, 2018, a federal grand jury in the Southern District of Florida returned an Indictment charging Defendant Ortega and others (including Gustavo) with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), substantive counts of money laundering in violation of 18 U.S.C. § 1956, and substantive counts of interstate and foreign travel in aid of racketeering in violation of 18 U.S.C. § 1952.  ECF No. 19.  The Indictment also alleged that certain specific property was subject to forfeiture.  *Id.* at 6-8.  The Condominium was not identified in the Indictment.

On August 22, 2018, the Court entered a Protective Order for Assets Subject to Forfeiture. ECF No. 32.  The Condominium was not listed in the Protective Order.

**The Condominium is Restrained in a Notice of Lis Pendens in Gustavo's Case and Subsequently in an Amended Protective Order.**

On September 21, 2018, the Government filed a Notice of Lis Pendens Re: Forfeiture relating to the Condominium in the case against Gustavo. ECF No. 46.  The Notice of Lis Pendens did not include the Government's rationale for encumbering the Condominium, which is owned as of April 10, 2017 by Land Trust, whose trustee is Tulia and whose settlors and grantors are Tulia and Cesar.  *See* United States' Unopposed Motion for Preliminary Order of Forfeiture, Declaration of Special Agent Vega, ECF No. 120-1 at ¶¶ 39-40.

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687
www.sfslaw.com

3

On October 24, 2018, the Government filed a one-count Superseding Information, charging Defendant Ortega with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). ECF No. 53. Subsequently, on October 26, 2018, the Court issued an Amended Protective Order for Assets Subject to Forfeiture, which enjoined and restrained the Condominium to preserve its availability for criminal forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1).

**Defendant Ortega Pleads Guilty and Agrees to Forfeit Certain Identified Property, but the Condominium is not Expressly Referenced in the Plea Agreement or Factual Proffer.**

On October 31, 2018, Defendant Ortega, pursuant to a written Plea Agreement, pleaded guilty to conspiracy to commit money laundering as charged in the Superseding Information. ECF Nos. 61, 64, and 65. Pursuant to the Plea Agreement, Defendant Ortega agreed to forfeit to the United States voluntarily and immediately certain identified property. ECF No. 64 at ¶ 14. Defendant Ortega's Factual Proffer supporting the Plea Agreement also noted that bribery proceeds were used to acquire securities and real property. ECF No. 65 at 7-9. The Condominium was not identified or referenced in either the Plea Agreement or Factual Proffer.

**The Government Files an Unopposed Motion for Preliminary Order of Forfeiture Stating $120,000 of Defendant Ortega's Criminal Proceeds were Unknowingly Borrowed and Used to Finalize Purchase of $1,050,000 Condominium.**

On June 21, 2019, the Government filed its Motion for Preliminary Order of Forfeiture, unopposed by Defendant Ortega.[3] In support, the Government attached the Declaration of Special

---

[3] It is unsurprising that a defendant who has pled guilty and is awaiting sentencing has a "powerful incentive to agree to forfeit as many assets as he possibly can, regardless of whether he actually has any interest therein, and to provide testimony that is helpful to the Government." *United States v. Bailey*, 926 F. Supp. 2d 739, 771 (W.D.N.C. 2013) (agreeing that defendants have a powerful incentive to make "self-serving and conclusory statements" in support of forfeiture of a third-party's property).

Agent Vega. Therein, Agent Vega stated that on May 31, 2016, Defendant Ortega's $7 million gains from his criminal activity was deposited into GSTF's account ending in 6054 ("GSTF 6054"). Almost a year later on April 3, 2017, $30,000 was transferred from that GSTF account to account number 898470726 at Wells Fargo Bank, held in the name of GSM ("GSM Account 7276"). ECF No. 120-1 at ¶¶ 31. Agent Vega states that the transferred funds purportedly used to purchase the Condominium were characterized as a "structuring fee" arising out of a $1 million loan agreement for Serfindata S.A. *Id.* at ¶¶ 34-35. On April 18, 2017, $30,000 was transferred from GSM Account 7276 to a trust account for the purchase of the Condominium. *Id.* at ¶ 32.

A day later, an additional $90,000 was transferred from GSTF 6054 to GSM Account 7276. *Id.* at ¶ 37. These funds were characterized as a loan agreement between GSM and GSTF, which contemplated a one-month maturity date with principal and 8% interest to be repaid to GSTF. *Id.* On that same date, $86,119.83 was transferred from GSM Account 7276 to the trust account for the Condominium. *Id.* at ¶ 32.

Agent Vega noted the Condominium was owned by Land Trust, Tulia was its trustee, and Tulia and Cesar were the settlors and grantors. *Id.* at ¶¶ 39-40. Agent Vega did not state Tulia and Cesar were aware of the nature of the funds borrowed or that GSTF was involved in criminal activity. Agent Vega's declaration also did not reference the irrefutably legitimate source of the additional funds ($900,000 and a closing credit of $61,500) used to purchase the Condominium or the manner and extent either of the purported loans were repaid.

**The Court Enters a Preliminary Order of Forfeiture Subjecting Property the Government Knows is Owned by a Third-Party to Forfeiture.**

Pursuant to the Government's Unopposed Motion for Preliminary Order of Forfeiture and Proposed Order, the Court entered on June 24, 2019 a Preliminary Order of Forfeiture subjecting

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687
www.sfslaw.com

5

the Land Trust's Condominium to forfeiture. ECF No. 124. On July 23, 2019, the Government mailed the Preliminary Order of Forfeiture to the Condominium to provide notice to the Land Trust of its right to assert a claim to the Condominium.

### FACTS ESTABLISHING THE LAND TRUST'S VALID INTEREST IN THE CONDOMINIUM

To support Land Trust's assertion that the Condominium is Tulia's property and not Defendant Ortega's, Gustavo's, or GSTF's property, this petition first explains the nature of the relationship between Gustavo and Tulia and Cesar and then explains the Condominium transaction.

I.  **Relationship Between Gustavo and Cesar and Tulia.**

As the Government undoubtedly knows, Cesar and his wife, Tulia, have been financially devastated by the Government's association of Cesar and his independent corporate entities with his brother, Gustavo. To seize the Condominium based on these facts would be more of the same – being Gustavo's relative is not a crime and does not impute knowledge of alleged wrongdoing.

Cesar and Gustavo operated distinct and autonomous corporate entities during the time period at issue in Gustavo's and Defendant Ortega's indictments. Although Cesar and Gustavo are siblings and Gustavo sometimes referred clients to the SEC-regulated-broker dealer that Cesar used to run, the brothers had different visions for their careers. Accordingly, in 2001, Cesar founded the SEC-regulated-broker dealer, Global Strategic Investments, LLC ("GSI"), a Florida corporation based in Miami. In 2002, Gustavo founded GSTF's investment manager, Global Securities Advisors, LLC, a Florida corporation based in New York City that was later succeeded by Global Securities Advisors GP, LLC (together with Global Securities Advisors, LLC, "GSA"), a Delaware corporation based in New York City. GSI and GSA also have a common passive

parent entity, a Florida corporation called Global Securities Holdings, LLC ("GSH"),[4] which in turn is held by a trust managed by Gustavo for the benefit of Maria Elena Hernandez and Maria Lucia Hernandez, Cesar's and Gustavo's two sisters.

Notwithstanding this ownership structure, since 2004 and aside from informal agreements between GSI and GSA to share and thereby reduce costs, GSI and GSA have operated autonomously and have made all business decisions independently. Since 2004, Gustavo has had no role within GSI. Neither GSI nor Cesar have ever had any role in GSA. To the extent GSI and GSA—and by extension Cesar and Gustavo, respectively—have had any business relationship, they agreed informally to split office rental costs and to share personnel. Among those personnel was Publio Velasco, who served as accountant and Chief Financial Officer for several corporate entities affiliated with different members of the Hernandez family, including GSM. Velasco had full autonomy and unbridled discretion to manage cash flow needs for each of those entities.

Moreover, both GSI and GSA, and other entities affiliated with different members of the Hernandez family, used GSM as a management company. GSM in many instances hired employees to be shared by entities, manage shared expenses like rent, internet, and other service providers, and in some instances, provide loans or advances to employees/directors.

---

[4] Cesar is listed in GSH's corporate paperwork as a "Manager," but this role does not give him any authority over, access to, or operational or supervisory function within GSA or GSTF. Further, on May 2015, GSH sought to transfer its full 100 percent stake in GSA to a British Virgin Islands entity called Global Securities International Holdings Corporation. Since May 2015, Cesar and GSI have continued to operate independently of GSA as they always have, but under the subjective view that GSA fell under a distinct ownership structure. However, to resolve an unrelated litigation regarding debts owned by GSH, GSH agreed that the May 2015 transfer was void and that GSH remains the 100 percent owner of GSA through the present.

## II.     Condominium Transaction.

Neither Gustavo nor Defendant Ortega ever held any ownership interest, direct or indirect, in the Condominium and the Land Trust's ownership of the Condominium is not derived from the fraud alleged in Gustavo's and Defendant Ortega's indictments. To illustrate this fact, the following is the history of the Condominium transaction, including the sources of funding Tulia and Cesar used: (1) proceeds from an investment Cesar made in a real estate development company; (2) earnings Cesar made through a Panamanian entity for business referrals he provided; and (3) loan funds Cesar obtained from his Uruguayan business associate, Marcelo Romaniello.

### A.  History of Transaction.

Tulia and Cesar expressed interest in the Condominium on November 11, 2016 via letter to First Way Realty and ISG Sage. *See* Email from ISG Sage, attached as Exhibit 1. On November 14, 2016, Marly Jaramillo of ISG Sage responded with an outline of the parameters of a purchase agreement, noting that Tulia would execute the agreement in her individual capacity, but incorporate a personal trust to receive ownership of the Condominium. *Id.*

A purchase agreement and an addendum to the purchase agreement between Tulia and PMG Driftwood LLC (representing Sage Beach Condominium) was eventually executed on December 5, 2016. *See* Purchase Agreement and Addendum, attached as Composite Exhibit 2. The agreement and addendum contemplated a purchase price of $1,050,000 with an initial 20% deposit to be held in escrow by the escrow agent, First American Title Insurance Company, Inc., and the balance due at closing on March 14, 2017. *Id.* The addendum provided that Tulia could assign her rights and obligations to any trust for the benefit of Tulia or any immediate family members, and that seller would give Tulia two credits at closing of $49,000 and $12,500,

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687
www.sfslaw.com

8

representing the estimated cost of 24 months of condominium assessments and a portion of the closing charges, respectively.

On April 10, 2017, Tulia and Cesar created the Land Trust to receive and manage the Condominium for the benefit of Cesar and Tulia. *See* Trust Agreement, attached as Exhibit 3. On that same date, Tulia and Cesar created the Pour Over Trust making their four adult children – Stephanie Hernandez, Cesar Gabriel Hernandez Jr., Juan David Hernandez, and Daniela Sofia Hernandez – the beneficiaries of the Condominium owned by the Land Trust. *See* Pour Over Trust, attached as Exhibit 4.

On April 14, 2017, the Land Trust closed on the Condominium and PMG Driftwood, LLC executed a Special Warranty Deed transferring the rights and interests in the Condominium to the Land Trust. *See* HUD Settlement Statement and Special Warranty Deed, attached as Composite Exhibit 5. The HUD Settlement Statement reflects that the amount to be paid by Tulia for the Condominium after application of fees and closing costs was $1,078,205.97. *Id.* Further, the Settlement Statement reflects that Tulia paid $962,086.14 prior to closing with $900,000 was deposited in escrow, $61,500 applied as a closing credit from the seller, and an additional $586.14 adjustment for unpaid county taxes from seller. Tulia paid the balance of $116,119.83 due at closing by April 19, 2017, which are the funds the Government contends subjects the Condominium to forfeiture. The sources of all funds to purchase the Condominium are as follows.

B. **Sources of Funding.**

    a. **Cesar's Proceeds from the Sale of a Stake in a Real Estate Development Company.**

In 2003, Cesar met Rajiv Bhakta. At the time, Bhakta was soliciting investors for his family's real estate development company, which was then pursuing a project in Vail, Colorado.

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687

www.sfslaw.com

9

Cesar and Gustavo informally agreed in 2003 to invest with Bhakta and to split the proceeds of that investment evenly amongst themselves. To effectuate this investment, the Florida corporation GSH—which is the passive parent company of Cesar's former company GSI—took a minority 31 percent stake in the Bhakta's development corporation, which is now called Vanquish Vail I & II, LLC.

Twelve years later, in 2015, Bhakta's efforts had substantially increased the value of the development corporation and Bhakta began floating to Cesar and Gustavo the prospect of buying out GSH's minority stake. Cesar and Gustavo both agreed to this buyout. Consequently, on July 29, 2016, Bhakta's corporate entity Vanquish Vail I & II, LLC wired $2,000,000 to an Occidental Bank (Barbados) Ltd. account held by GSH's parent company, the British Virgin Islands corporation Global Finance Management Corporation ("GFM"). *See* Occidental Bank Statement, attached as Exhibit 6.

Cesar and Tulia ultimately decided to buy the Condominium with the funds from this distribution after months of deliberation.[5] Thus, Cesar notified Gustavo he was taking his share of the distribution from the Bhakta investment and asked Publio Velasco—who, as stated above, served as the accountant for several corporate entities affiliated with different members of the Hernandez family, including GFM—to wire a $210,000 deposit to the escrow agent designated in the Purchase Agreement. Velasco completed this wire through GFM and subsequently completed three additional wires to the escrow agent from GFM: (1) for $290,000 on January 5, 2017; (2) for $250,000 on February 8, 2018; and (3) for $150,000 on February 24, 2017. Thus, Cesar's share

---

[5] To protect their children's financial futures, they also decided to vest formal ownership of the Condo in the Land Trust, and to vest ownership of the Land Trust in the Pour Over Trust.

in the proceeds from the 2003 Vail investment funded $900,000 of the Condo's $1,050,000 Purchase Agreement price.

### b. Cesar's Earnings from Panamerica Capital Group.

As noted above, the gross amount due to seller at closing was $1,078.205.97. After applying the $900,000 deposits, a seller's credit of $61,500, and unpaid county taxes of $586.14, a $116,119.83 shortfall remained. Cesar and Tulia sought and obtained a one-month extension for closing.

Cesar and Tulia did not have $116,119.83 in liquid assets at that time. Cesar did, however, know that he was entitled to $37,870 in business referral fees he generated for a Panamanian corporation which was then affiliated with the Hernandez family, Panamerica Capital Group ("PCG"). Accordingly, Cesar requested that Velasco pay Cesar's PCG earnings, received in GSM Account 7276 on April 17, 2017, directly to the Purchase Agreement escrow agent. Although Cesar had requested the full $37,870 be sent to the escrow agent, Velasco exercised his discretion to limit the transfer to $30,000, which he did through GSM on April 18, 2017.[6] *See* GSM Account 7276 April 2017 Statement, attached as Exhibit 7. Thus, Tulia and Cesar needed to obtain the remaining $86,119.83 from another source after attempting but failing to secure a loan from a traditional mortgage lender due to the time constraints.

---

[6] Agent Vega states this $30,000 came from GSTF 6054 because $30,000 were wired from GSTF 6054 to GSM Account 7276 on April 3, 2017. Agent Vega then states $30,000 were transferred from GSM Account 7276 to the escrow agent on April 18, 2017. Agent Vega's declaration, however, fails to establish a factual link between these two transfers other than that they were both $30,000. Notably, Agent Vega did not account for a $30,000 transfer to Global Shared Solutions Corp. Business Checking out of the GSM Account 7276 on that same date.

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687
www.sfslaw.com

11

### c. Loan from Uruguayan Business Partner.

Aware that his share of the development corporation sale proceeds and his earnings from PCG would still not cover the entire purchase amount for the Condominium, Cesar sought an informal short-term $80,000 loan from his acquaintance Marcelo Romaniello, a Uruguayan national affiliated with an investment group called Polo Sur. Romaniello agreed to provide the loan but was unable to send the funds to Cesar quickly enough to meet the extended closing date. Accordingly, Cesar went back to Velasco and asked that GSM provide another short-term loan to satisfy the remaining shortfall. Cesar notified Velasco that he would repay this short-term loan as soon as he received funds from Romaniello. Velasco fulfilled Cesar's request by obtaining a short-term loan of $90,000 loan from GSM, which, in turn, obtained a loan of $90,000 from GSTF on April 18, 2017.

Velasco then wired $86,119 from GSM to the Purchase Agreement escrow agent on April 19, 2017, which covered the remaining shortfall and consummated the Purchase Agreement. *See* Exhibit 7. Less than a month later, on May 10, 2017, Cesar instructed Romaniello to wire GSM the $80,000 he had requested as partial repayment for GSM's loan, but Romaniello discounted the interest from the loan and wired only $71,600. *See* GSM Account 7276 May Statement, attached as Exhibit 8. Velasco, however, repaid GSTF only $50,460 of the $71,600 and credited Cesar that amount in the GSM accounting Thus, by May 10, 2017 and to this date, Cesar repaid all but approximately $39,540 of GSM short-term $90,000 loan.

### MEMORANDUM OF LAW

Tulia and Cesar only came to know that Velasco obtained the funds for the short-term $86,119 loan from GSTF, the entity the Government has alleged was Gustavo's "fake fund" used to launder Defendant Ortega's criminal proceeds. *United States v. Guruceaga, et al*, Case No. 18-

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687

www.sfslaw.com

12

mj-03119, DE 3 at 23 ¶ 82.  Even under such a reading, at most $40,000 of the $1,016,119 Cesar and Tulia paid for the Condo—less than four percent—arguably came from GSTF.  Moreover, it is unclear how this *de minimis* amount could be the basis for any ownership interest that Gustavo or Defendant Ortega may have in the property.

In light of the Condominium's true ownership, the sources that funded that ownership, and the narrative of the Condominium purchase transaction provided above, there is no persuasive claim that the Condominium, owned by the Land Trust, is subject to forfeiture as Gustavo's or Defendant Ortega's "substitute property."  Consequently, the Court must amend its Preliminary Order of Forfeiture to exclude the Condominium from the property subject to forfeiture.

**I.      The Land Trust, an Innocent Third Party, Owns the Condominium.**

The Condominium is not subject to forfeiture under the relevant statute, which only authorizes forfeiture of "property of the defendant[.]"  21 U.S.C. § 853(p)(2) (emphasis added); *see also* Fed. R. Crim. P. 32.2(b) advisory comm. notes (2000) (observing that "criminal forfeiture is an in personam action in which only the defendant's interest in the property may be forfeited"); *United States v. Bailey*, 926 F. Supp. 2d 739, 764 (W.D.N.C. 2013) (noting that the primary remedial purpose underlying criminal forfeiture is "to punish the defendant and to disgorge him of his ill-gotten gains"); *In Re Moffitt, Zwerling & Kemler*, 864 F. Supp. 527, 535-36 (E.D.Va. 1994) (holding that § 853(p) "plainly states that it applies only to the defendant"); *In Re Moffitt, Zwerling & Kemler*, 875 F. Supp. 1152, 1162 (E.D. Va. 1995) ("Criminal forfeiture of substitute assets is available against a defendant but not against a third party").

Here, the Condominium is clearly owned by Tulia through the Land Trust and Pour Over Trust, legal documents that establish the Condominium is held by these trusts to benefit Tulia, Cesar, and their four adult children.  Notably absent from these documents is any suggestion that

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687
www.sfslaw.com

13

Defendant Ortega or Gustavo have any beneficial or direct ownership interest. Indeed, the Government's evidence does not suggest Defendant Ortega or Gustavo own the Condominium. To allow forfeiture of a third-party's property due to a *de minimis* financial connection to a defendant in criminal proceedings and based largely on the defendant's plea agreement would result in an extremely liberal expansion of the purpose of this statute. Although 21 U.S.C. § 853(o) expressly states that the statute should be construed liberally to effectuate the purpose of the statute, that purpose is the punishment of the *defendant*. Thus, it follows that "the statute should be construed *narrowly* when it is being interpreted in any manner that does not serve to punish the Defendant." *See Bailey*, 926 F. Supp. 2d at 764 (emphasis added). Properly construing the statute narrowly as to the Condominium, the Court should amend its Preliminary Order of Forfeiture and remove the Condominium from the list of assets subject to forfeiture. *See id.* (concluding that third-party properties were not subject to forfeiture because the third-party petitioners established legal title to the properties which was refuted only by the defendant's plea agreement).

## II. Alternatively, the Condominium is not Subject to Forfeiture because Tulia is a Bona Fide Purchaser for Value.

Alternatively, the Condominium is not subject to forfeiture because Tulia and Cesar were reasonably without cause to believe that the funds they borrowed to finalize the purchase of the Condominium were subject to forfeiture.

"[S]tate law determines the nature of a claimant's interest in forfeited property." *United States v. Suarez*, 716 F. App'x 937, 938 (11th Cir. 2018). "Under Florida law, to be a bona fide purchaser, the purchaser must have '(1) acquired legal title to the property in question, (2) paid value therefore, and (3) been innocent of knowledge of the equity against the property at the time

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687

www.sfslaw.com

14

when consideration was paid and title acquired.' " *Id.* (quoting *DGG Dev. Corp. v. Estate of Capponi*, 983 So. 2d 1232, 1234 (Fla. 5th DCA 2008)).

Whether the property in question is the funds loaned to Cesar by GSTF through GSM (and Velasco) and used by Tulia to purchase the Condominium or the Condominium itself, Tulia is a bona fide purchaser for value of the Condominium on April 14, 2017. Tulia was not made aware the Condominium could even be subject to forfeiture until the Government filed a Notice of Lis Pendens Re: Forfeiture relating to the Condominium in the case against Gustavo on September 21, 2018. ECF No. 46. Moreover, Tulia was not even aware Velasco utilized funds from GSTF for the short-term loan of $86,119, much less that Cesar's brother, Gustavo, was allegedly involved in a money laundering conspiracy and that GSTF was allegedly a "fake fund" used to launder criminal proceeds. Finally, Tulia and Cesar intended the Condominium to benefit them and their adult children.

This matter is similar to the one presented in *United States v. Coffman*, 997 F. Supp. 2d 677, 689 (E.D. Ky. 2014), *aff'd*, 612 F. App'x 278 (6th Cir. 2015). There, the Government sought forfeiture of a condominium owned by a defendant's relative because she borrowed $151,000 from the defendant's wife's company to purchase the condominium. The court found that the third-party was a bona fide purchaser and excluded the condominium from the forfeiture order because (i) she had executed a mortgage granting the defendant's wife's company a secured interest in the condominium, (ii) made payments on the note from her and her husband's income, (iii) did not become aware of the defendant's illegal conduct until months after purchasing the condominium, (iv) believed her relative's wealth came from "wise investments" and a "prosperous" career as an attorney, and (v) intended the condominium to serve as the residence for her and her husband. *Id.* at 688-89. The same result should apply here.

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687

www.sfslaw.com

15

## CONCLUSION

Based on the foregoing, the Court must amend its Preliminary Order of Forfeiture and remove the Condominium from the list of assets subject to forfeiture in this criminal matter. Moreover, the Court should award the petitioner attorneys' fees pursuant to 28 U.S.C. § 2412(d)(1)(A) because the Government's position is not substantially justified.

Dated: August 21, 2019.

Respectfully submitted,

STUMPHAUZER, FOSLID, SLOMAN,
ROSS & KOLAYA, PLLC
*Counsel for Third-Party Petitioner*
*Land Trust TH 041117*
2 South Biscayne Boulevard
Suite 2550
Miami, Florida 33131
Telephone:   (305) 371-9686
Fax:               (305) 371-9687

By: */s/ Jeffrey H. Sloman*
    Jeffrey H. Sloman, Esq.
    Florida Bar No. 378879
    jsloman@sfslaw.com
    Jorge A. Pérez Santiago
    Florida Bar 91915
    jperezsantiago@sfslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of August 2019, I electronically filed the foregoing with the Clerk of Court using CM/ECF, causing a copy to be served on counsel of record, including those listed below.

*/s/ Jeffrey H. Sloman*
Jeffrey H. Sloman, Esq

## SERVICE LIST

| | |
|---|---|
| Luis Eduardo Delgado | Nalina Sombuntham |
| Adam Louis Schwartz | US Attorney's Office |

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687
www.sfslaw.com

16

Case 1:18-cr-20685-KMW  Document 131  Entered on FLSD Docket 08/21/2019  Page 17 of 18


Case No.: 1:18-cr-20685-KMW

Homer Bonner & Delgado
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
305-350-5100
379-0918 (fax)
ldelgado@homerbonnerlaw.com
aschwartz@homerbonner.com

*Counsel for Defendant Abraham Ortega*

Nicole Grosnoff
U.S. Attorney's Office
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9294
nicole.s.grosnoff@usdoj.gov

*Counsel for the United States*

Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132
305-961-9224
nalina.sombuntham2@usdoj.gov

*Counsel for the United States*

Case No.: 1:18-cr-20685-KMW

## Declaration Under Penalty of Perjury

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:

8/20-2019
DATE

_____
Tulia Eugenia Hernandez
Trustee of Land Trust TH 041117

Stumphauzer Foslid Sloman Ross & Kolaya, PLLC | Attorneys at Law
2 South Biscayne Boulevard, Suite 2550 | Miami, FL 33131 | T + 1 305.371.9686 | F +1 305.371.9687

www.sfslaw.com

18